IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Marhaygue, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:12-cv-00322-RMG-JDA |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Wolfpac Technologies, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Plaintiff's motion for a temporary restraining order ("TRO") without notice to Defendant. [Doc. 5.] Pursuant to the provisions of Title 28, United States Code, Section 636 and Local Rule 73.02(C)(7), D.S.C., this magistrate judge is authorized to review pretrial motions and submit findings and recommendations to the District Court in cases referred for pretrial management.

## BACKGROUND

On February 2, 2012, Plaintiff filed this action alleging willful and intentional patent infringement under 35 U.S.C. § 271 et. seq. [Doc. 2.] Plaintiff is the assignee of U.S. Patent No. 7,997,044 ("the '044 Patent"), issued August 16, 2011, which is directed to an *Enclosure and Method for Making an Enclosure*. [Docs. 2-1, 5-3.] Specifically, with respect to this litigation, the '044 Patent is directed to construction of closed exterior trim, such as columns [Docs. 2-1, 5-3, U.S. Patent No. 7,997,044 col. 1 ll. 13–15 (filed Aug. 16, 2011)], a product Plaintiff refers to as the Column Wrap [Doc. 5-1 at 1]. The '044 Patent has 19 claims; Claims 1, 2, 6, 13, 17, 18, and 19 are independent claims. [U.S. Patent No. 7,997,044 col. 5 l. 35–col. 8 l. 59.]

Plaintiff alleges Defendant is selling a product under the trademark VERSAWRAP® that infringes at least Claims 17 and 19 of the '044 Patent. [Doc. 5-1 at 9.] Plaintiff states that, at or around the time of the issuance of the '044 Patent in August 2011, it became aware of Defendant's allegedly infringing product line and immediately began investigating Defendant's products and activities. [Doc. 5-2 ¶ 11.] The investigation[1] revealed Defendant's enclosure products—including but not limited to those identified as VW040486/10 (4"x4"), VW040686/10 (4"x6"), VW060686/10 (6"x6"), and VW080886/10 (8"x6")—were virtually indistinguishable in appearance from the Column Wrap. [*Id.*]

Plaintiff alleges Defendant was aware of the '044 Patent and did not independently or innocently develop the VERSAWRAP® product line. [Doc. 5-1 at 3.] Plaintiff also alleges Defendant began selling its infringing products in June 2011. [*Id.*] Further, Plaintiff alleges, as a result of Defendant's infringing activities, Plaintiff has recently lost its best customer. [*Id.*] Additionally, Plaintiff alleges Defendant's interactions with Plaintiff's former customer have allegedly led to the disclosure of Plaintiff's pricing because there are unmistakable similarities between Plaintiff's product line pricing and Defendant's, which is lower than Plaintiff's. [*Id.* at 4; *see* Doc. 5-2 at 33.]

Plaintiff contends it will continue to suffer irreparable harm because (1) it has already lost its major customer and this trend will continue if Defendant is not enjoined; (2) Plaintiff will face possible layoffs in an already crippled coastal South Carolina economy; and (3) continued infringement will result in the loss of revenue. [Doc. 5-1 at 4.] Additionally, Plaintiff contends that, once others become aware of Defendant's disregard

---

[1] Plaintiff has provided no time frame for when this investigation was completed or whether it gave notice to Defendant regarding Defendant's alleged infringement.

of Plaintiff's patent rights, the potential for additional competing products will increase. [*Id.*] Plaintiff claims the inevitable loss of market share, price erosion, and tarnished goodwill resulting from Defendant's infringement is immeasurable. [*Id.* at 5.] Accordingly, Plaintiff seeks a TRO to prevent Defendant from attending the International Building Show, a trade show in Orlando, Florida, on February 8, 2012, where Defendant intends to exhibit its infringing product. [*Id.* at 4.]

## **APPLICABLE LAW**

Under the Federal Rules of Civil Procedure, a court may issue a TRO without notice to the adverse party or its attorney. Fed. R. Civ. P. 65(b). The order expires at a time set by the court, which should not exceed fourteen days from the time the court enters the TRO unless there is good cause for or the adverse party consents to an extension. *Id.* If the court issues a TRO without notice to the adverse party, the motion for a preliminary injunction must be set for hearing at the earliest possible time; a preliminary injunction may not issue without notice to the adverse party. *Id.*; Fed. R. Civ. P. 65(a). The court must dissolve the TRO if the party who obtained it does not proceed with the motion for preliminary injunction at the hearing. Fed. R. Civ. P. 65(b). Further, the court may not issue a preliminary injunction nor a TRO unless the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

As the Supreme Court has made clear:

> Ex parte temporary restraining orders are no doubt necessary in certain circumstances, cf. Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 180, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968), but under federal law they

3

> should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). Accordingly, the Federal Rules of Civil Procedure require a party moving for a TRO to attempt to give the affected party or her counsel actual notice of when and where the movant is applying for the TRO. *See* Fed. R. Civ. P. 65(b). A TRO may issue without such notice **only if**:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

*Id.*

To obtain a TRO or a preliminary injunction, the movant must show four elements:[2]

> 1) he is likely to succeed on the merits,
>
> 2) he will suffer irreparable harm if the TRO or preliminary injunction is not granted,
>
> 3) the balance of equities favors him, and
>
> 4) the TRO or injunction is in the public interest.

---

[2] In patent cases, a TRO "involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988). However, "purely procedural questions involving the grant of a [TRO] are controlled by the law of the appropriate regional circuit." *Id.* Therefore, the Court will apply Federal Circuit law with respect to substantive patent issues and Fourth Circuit law with respect to non-patent substantive issues and procedural issues.

*Winter v. Natural Res. Def. Coucil, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008) ; *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("The standard for granting either a TRO or a preliminary injunction is the same."); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009) (explaining how the *Winter* standard for preliminary injunctions was different from the standard previously applied in the Fourth Circuit), *judgment vacated and remanded*, 130 S. Ct. 2371 (2010), *in light of Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010). The movant must establish all four elements to receive the requested relief. *Winter*, 129 S. Ct. at 374.

The Fourth Circuit explained the Supreme Court in *Winter* requires "that the plaintiff make a clear showing that it will likely succeed on the merits at trial." *Real Truth About Obama, Inc.*, 575 F.3d at 346 (citing *Winter*, 129 S. Ct. at 374, 376). Moreover, the movant must make a clear showing that it will likely suffer irreparable harm without a TRO. *Id.* at 347 (citing *Winter*, 129 S. Ct. at 374–76). Further, the Supreme Court in *Winter* emphasized the public interest requirement, *id.*, requiring courts to "'pay particular regard for the public consequences in employing the extraordinary remedy of injunction,'" *Winter*, 129 S. Ct. at 376–77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

### **DISCUSSION**

Plaintiff argues without a TRO, it will continue to suffer price erosion, layoffs, and the loss of goodwill, market share, and the exclusive right to a diligently commercialized and patented product. [Doc. 5-1 at 16.] Specifically, Plaintiff contends Defendant's infringing sales have resulted in dramatically decreased sales for Plaintiff and that it has had to cut back its labor force by 70%. [*Id.* at 14; Doc. 5-2 ¶¶ 15, 21.] Plaintiff also

contends it has been unable to compete with Defendant's lower sales prices [Doc. 5-1 at 14–15; Doc. 5-2 ¶ 17] and that the price erosion caused by Defendant's lower sales prices will be impossible to calculate [Doc. 5-1 at 15].  Finally, Plaintiff argues the risks associated with patent litigation has challenged its ability to attract formerly-interested third parties to any long term commitments.  [*Id.*; Doc. 5-2 ¶ 20.]  Assuming without deciding Plaintiff can establish it is likely to succeed on the merits of its patent infringement claim, the balance of equities is in Plaintiff's favor, and a TRO is in the public interest, the Court finds Plaintiff has failed to demonstrate it will likely suffer irreparable harm without a TRO.  Specifically, the Court finds (1) Plaintiff's alleged irreparable harm—lost profits, market share, and goodwill—began to occur around July 2011, approximately seven months before Plaintiff filed this motion for a TRO and (2) Plaintiff has failed to provide the Court any evidence of the possible inadequacy of money damages.

Under the TRO standard articulated in *Winter,* the movant must demonstrate more than the possibility of irreparable harm; the movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction."  129 S. Ct. at 375 (emphasis in original) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *Granny Goose Foods*, 415 U.S. at 441; *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).  "[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985)). However, as the Federal Circuit has stated,

6

> While this court has repeatedly upheld the right of a patentee to a preliminary injunction and sometimes spoken of the possible inadequacy of money damages, there is no presumption that money damages will be inadequate in connection with a motion for an injunction pendente lite. Some evidence and reasoned analysis for that inadequacy should be proffered. *See, e.g.*, *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390, 2 USPQ2d 1926, 1930 (Fed. Cir.1987) (patent owner emphasized "the few remaining years of patent life").

*Nutrition 21 v. U.S.*, 930 F.2d 867, 871–72 (Fed. Cir. 1991); *see also Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456 (Fed. Cir. 1988) (basing grant of preliminary injunction on ten factors that indicated the plaintiff would be irreparably harmed); *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F. Supp. 2d 604, 636–39 (W.D. Va. 2010) (finding no irreparable harm to goodwill when it was "logically and factually unclear" how introduction of a competing product would injure the plaintiff's goodwill when plaintiff did not demonstrate more than the potential for lost sales or give a reasonable basis for its conclusion that its training programs would lose value); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1262–63 (D. Kan. 2009) (finding irreparable harm based on the plaintiffs' claims of loss of market share and price erosion because the plaintiffs provided evidence that the asserted harms were incalculable and not compensable through money damages).

Here, Plaintiff has failed to demonstrate a TRO is necessary to prevent future irreparable harm to Plaintiff. Rather, Plaintiff has demonstrated only that it has already suffered significant irreparable harm as a result of Defendant's alleged infringement. Plaintiff has submitted an affidavit averring (1) Plaintiff began losing profits exactly when

Defendant began offering its allegedly infringing column wrap product around July 2011[3] [Doc. 5-2 ¶ 15]; (2) Plaintiff was forced to cut its labor force by 70% [*id.* ¶ 21]; (3) Plaintiff has had trouble attracting formerly-interested third parties to long term commitments because of the threat of patent litigation [*id.* ¶ 20]; and (4) Plaintiff began conducting an investigation of Defendant's allegedly infringing products and activities in August 2011 [*id.* ¶ 11]. Thus, the affidavit reveals Plaintiff has known of Defendant's allegedly infringing activities and their effect on Plaintiff's business and opportunities to exploit the '044 Patent for months before Plaintiff filed this motion for a TRO. A TRO is not an appropriate vehicle for attempting to correct past harm.

Additionally, the affidavit and Plaintiff's other submissions to the Court fail to demonstrate Plaintiff is likely to suffer any additional harm for which money damages would be inadequate compensation. While the Court agrees with Plaintiff the types of harm it allegedly suffered as a result of Defendant's alleged infringement usually cannot be

---

[3] Plaintiff has submitted the following sales data:

| | |
|---|---|
| September 2010 | $55,972.00 |
| October 2010 | $14,087.72 |
| November 2010 | $41,826.31 |
| December 2010 | $19,827.10 |
| January 2011 | $13,428.20 |
| February 2011 | $30,012.90 |
| March 2011 | $19,124.50 |
| April 2011 | $11,247.97 |
| May 2011 | $9,039.80 |
| June 2011 | $3,703.93 |
| July 2011 | $17.72 |
| August 2011 | $754.36 |
| September 2011 | $23.85 |

[Doc. 5-2 at 31 (totaling 2010 and 2011 sales to customer allegedly lost to Defendant).] The Court notes that although Plaintiff contends it began experiencing a reduced volume of sales in July 2011, it appears Plaintiff began experiencing decreased sales prior to July 2011 and that Plaintiff experienced a drastic decreased in July 2011.

compensated through money damages, *see Multi-Channel*, 22 F.3d at 552; *Bushnell*, 673 F. Supp. 2d at 1262–63, the Court cannot conclusively determine money damages are inadequate to compensate for the harm inflicted during the period for which the TRO is requested without some evidence of inadequacy, *Nutrition 21*, 930 F.2d at 871–72. Unlike the plaintiffs in *Bushnell*, who presented affidavits stating why and how money damages were inadequate to compensate the plaintiffs for lost market share and price erosion, 673 F. Supp. 2d at 1262–63, Plaintiff has provided no evidence that money damages would be inadequate. Rather, the affidavit Plaintiff submitted with its motion for a TRO merely states, "[Defendant] is planning to exhibit its infringing product at this year's IBS, which will take place in Orlando, Florida on February 8, 2012" [Doc. 5-2 ¶ 19] and the IBS is "the most widely attended and respected trade show in the business" [*id.* ¶ 10]. While Plaintiff insinuates Defendant's exhibit will cause Plaintiff to lose goodwill, Plaintiff has failed to demonstrate how Defendant's mere exposure at the IBS will detract from Plaintiff's goodwill when Plaintiff has also exhibited the Column Wrap annually at the IBS and won innovation awards at the IBS [*id.*]. Moreover, Plaintiff has failed to show Defendant's exhibit at the IBS will increase Defendant's opportunities.[4] [*See id.* ¶ 19 (stating Defendant has announced in its "*widely distributed* electronic newsletter" plans to expand its column wrap product line (emphasis added)).] Therefore, the Court concludes Plaintiff has failed to

---

[4] As explained above, Plaintiff has failed to demonstrate how any harm it will allegedly suffer if Defendant exhibits at the IBS, or otherwise continues its allegedly infringing activities during the period of the TRO, is any different from the harm Plaintiff has already suffered and known about for some length of time. That is, the Court finds Plaintiff has failed to demonstrate it will suffer any additional irreparable harm. Accordingly, because a TRO cannot compensate for the irreparable harm Plaintiff has already suffered, the Court finds Plaintiff is not entitled to enjoin Defendant from its activities without allowing Defendant the opportunity to respond to Plaintiff's allegations.

establish it will likely suffer immediate irreparable harm sufficient to excuse notice to Defendant of Plaintiff's application for a TRO.  See Fed. R. Civ. P. 65(b)(1)(A).

### **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Plaintiff's motion for an ex parte TRO be DENIED for failing to meet the standard of Rule 65(b) of the Federal Rules of Civil Procedure.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

February 6, 2012<br>
Greenville, South Carolina